UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| JUSTICE FREEMAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:19-cv-441 |
| | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| OFFICER D. GUTIERRIEZ, in his | ) | |
| individual capacity; OFFICER K. | ) | |
| DOWDELL, in his individual capacity; | ) | |
| CITY OF GARY, INDIANA, | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES

**Introductory Statement**

1. Justice Freeman was driving within his neighborhood and observing all traffic laws when he was stopped by defendant Officers D. Gutierrez and K. Dowdell, constituting an unlawful seizure. He was subsequently unlawfully searched by those officers. Despite having lawfully parked his car in front of his residence during that stop, Officer Gutierrez caused Mr. Freeman's vehicle to be towed and stored at a tow lot—a second unlawful seizure. As Mr. Freeman cannot afford the fees to recover his vehicle, it remains impounded to this day. Defendant City of Gary, Indiana has offered Mr. Freeman no opportunity to challenge the impounding of his vehicle, and has indicated an intention to sell Mr. Freeman's vehicle at a police auction. The defendants' actions violate the Fourth and Fourteenth Amendments to the United States Constitution, and Mr. Freeman is entitled to appropriate declaratory and injunctive relief against the City of Gary, as well as damages against all defendants.

1

**Jurisdiction, Venue, and Cause of Action**

2.     The Court has jurisdiction of this case pursuant to 28 U.S.C. § 1331.

3.     Venue is proper in this district pursuant to 28 U.S.C. § 1391.

4.     Declaratory relief is authorized by Rule 57 of the Federal Rules of Civil Procedure and 28 U.S.C. §§ 2201 and 2202.

5.     This action is brought pursuant to 42 U.S.C. § 1983 to redress the deprivation, under color of state law, of rights secured by the Constitution of the United States.

**Parties**

6.     Justice Freeman is an adult resident of the City of Gary in Lake County, Indiana.

7.     Officer D. Gutierrez was, during the timeframe relevant to the allegations in this Complaint, employed as a police officer with the Gary Police Department.

8.     Officer K. Dowdell was, during the timeframe relevant to the allegations in this Complaint, employed as a police officer with the Gary Police Department.

9.     The City of Gary is a city located in Lake County, Indiana that employs the officers of the Gary Police Department.

**Factual Allegations**

10.    On July 3, 2019, shortly after 12:00 a.m., Mr. Freeman left his residence in the Dorie Miller housing complex to run an errand to a nearby gas station.

11.    Mr. Freeman entered his vehicle, which was parked in front of his residence on Alabama Place.

12.    He traveled north on Alabama Place for less than a block, and turned east (right) onto 20th Court.

2

13. He then traveled approximately 300 feet east on 20th Court to the intersection with Maine Street, which is a one-way street going south.

14. Mr. Freeman made a complete stop at this intersection, and activated his turn signal indicating that he was turning right, to travel south.

15. As he turned south onto Maine Street, he noticed several police vehicles stopped in the middle of Maine Street, approximately 30 to 50 feet north of the 20th Court/Maine Street intersection.

16. As Mr. Freeman continued to travel south on Maine Street, he noticed several police vehicles begin to travel south on Maine Street, a short distance behind him.

17. After traveling south on Maine Street for one block, Mr. Freeman reached the intersection of Maine Street and Front Street (also known as 21st Avenue).

18. After stopping and activating his right turn signal, Mr. Freeman turned west (right) onto Front Street, which is a major east-west thoroughfare.

19. Mr. Freeman traveled at a slow rate of speed on each of these streets, in accordance with the speed limit.

20. After turning onto Front Street, Mr. Freeman observed the police vehicles behind him speed up significantly, in an apparent attempt to follow him.

21. Mr. Freeman was unnerved by this, because he knew that he had obeyed all traffic laws and speed limits since leaving his residence.

22. After traveling for less than one block, Mr. Freeman turned north (right) back onto Alabama Place, and parked his vehicle lawfully on the right-hand (east) side of the street, along the curb directly in front of his residence.

23. All told, Mr. Freeman drove—in the shortest and most direct way possible—around the block.

24. As Mr. Freeman parked his vehicle, the police vehicles also turned right onto Alabama Place, and after making the right-hand turn, activated their emergency lights.

25. Although Mr. Freeman was already parked at the time that he saw the emergency lights, he knew that he was being "pulled over" or stopped by the police. He therefore did not exit his vehicle, and he did not feel free to leave or otherwise end the encounter. A reasonable person would not have felt free to leave or otherwise end the encounter.

26. There existed no reasonable suspicion or probable cause to believe that Mr. Freeman had committed any infraction.

27. Mr. Freeman estimates that there were at least five police vehicles approaching or stopped behind him.

28. After parking, Mr. Freeman tapped his horn, in order to get the attention of his fiancée, Shauna Turner, who was inside the residence, so that she could witness the police stop.

29. Officers D. Gutierrez and K. Dowdell exited their police vehicles and approached the driver's side of Mr. Freeman's vehicle.

30. Mr. Freeman opened the driver's side window and handed his identification to Officer Gutierrez.

31. Officer Gutierrez immediately asked Mr. Freeman "where the weed" was, and stated that he could smell marijuana.

32. Mr. Freeman responded that there was no marijuana in the car.

33. Mr. Freeman asked Officer Gutierrez why he had been pulled over, but Officer Gutierrez did not answer Mr. Freeman.

34. Officer Gutierrez again stated that he smelled marijuana, and three times asked Mr. Freeman if he could search the vehicle.

35. Officer K. Dowdell also stated that he could smell marijuana and asked Mr. Freeman if he could search the vehicle.

36. Mr. Freeman at least three times responded that he did not consent to a search.

37. Officer Gutierrez then told Mr. Freeman that the officers had probable cause to search Mr. Freeman's vehicle, due to the alleged smell of marijuana, and ordered Mr. Freeman out of the car.

38. As Mr. Freeman exited his vehicle, Officer Gutierrez grabbed Mr. Freeman by his shoulders, and pressed Mr. Freeman against the car, between the front and back windows.

39. As Officer Gutierrez pressed Mr. Freeman against the vehicle, Officer Dowdell searched Mr. Freeman's person, including removing and examining the contents of Mr. Freeman's pockets—an identification card and cash.

40. Mr. Freeman asked multiple times why he had been pulled over, and in response to that question, Officer Gutierrez struck Mr. Freeman in the head and told him to "shut up" and that Officer Gutierrez would "f*** [him] up" if he did not stop speaking.

41. Mr. Freeman then shouted to Ms. Turner that Officer Gutierrez had beaten him, and asked her to start recording the incident.

42. Officer Gutierrez informed Mr. Freeman that by shouting, Mr. Freeman had disobeyed the officer's order to "shut up," and that he was therefore being arrested for disorderly conduct.

43. Officer Gutierrez handcuffed Mr. Freeman and placed him the back of his police vehicle.

44. While securing the seatbelt around Mr. Freeman, Officer Gutierrez elbowed Mr. Freeman several times, including in the head.

45. Mr. Freeman again shouted to Ms. Turner that he was being beaten and asked her to call 911.

46. At that point, another unidentified officer on the scene instructed Ms. Turner to stop recording and to go back inside her residence, otherwise she would be arrested.

47. After being threatened with arrest, Ms. Turner went inside the residence, but she stood just inside her large front window, watching and listening to the remainder of the encounter.

48. While Officer Gutierrez removed Mr. Freeman to the police vehicle, Officer Dowdell began searching Mr. Freeman's vehicle.

49. Officer Dowdell found no marijuana or any other unlawful items in Mr. Freeman's vehicle. No unlawful items were found by any other officer.

50. At the time that Mr. Freeman was removed from the scene of the arrest, his vehicle was lawfully and correctly parked in front of residence, where officers knew that his fiancée Ms. Turner was also present.

51. Ms. Turner has a valid driver's license, and had Mr. Freeman's permission and the ability to care for the vehicle that was parked in front of the residence.

52. As Officer Gutierrez transported Mr. Freeman to the police station, he dispatched S&S Tow to the scene and instructed it to tow Mr. Freeman's vehicle to its lot for storage.

53. At the time of Mr. Freeman's arrest, and at the time that Officer Gutierrez ordered the tow, there was no cause or reason to require that Mr. Freeman's car be impounded, including any community caretaking need.

54. Officer Gutierrez ultimately cited Mr. Freeman for a violation of "absolute speed" for "speeding in Dorie Miller".

55. Mr. Freeman does not know what that means, especially as at all times he was driving very short distances at a slow rate of speed.

56. That citation was voided by the prosecutor and dismissed.  A true and correct copy of the voided citation is attached as Exhibit 1.

57. After Mr. Freeman was released from police custody, Mr. Freeman called the Gary Police Department to ask where his car was currently located.

58. A representative of the Gary Police Department informed Mr. Freeman by telephone that his car had been towed and was being held in the S&S Tow lot.

59. At no point was Mr. Freeman afforded notice, a hearing, or other opportunity to contest the propriety of the tow or to otherwise challenge the seizure of his vehicle.

60. The lack of notice, hearing, or other opportunity to contest the propriety of the tow or the seizure of the vehicle are the result of a policy or practice of the City of Gary.

61. Mr. Freeman went to the S&S Tow lot on July 6, 2019 to retrieve his vehicle and was informed that he would be required to pay approximately $500 in fees before it would be released to him.

62. At that time, Mr. Freeman could not afford to pay those fees, and therefore could not secure the release of his vehicle.

63. Mr. Freeman's vehicle is still being stored in the S&S Tow lot, and it accrues a storage fee of $30 per day that it is stored there.

64. Mr. Freeman has accrued over $2,000 in fees resulting from the towing and storage of his vehicle.

65. Mr. Freeman does not have the financial ability to pay these fees in order to secure the release of his vehicle.

66.     Mr. Freeman has a property interest in his vehicle.

67.     Mr. Freeman suffers harm each day that he is deprived of the use of his vehicle.

68.     In a letter dated October 26, 2019, the City of Gary Police Department informed Mr. Freeman that failure to claim his vehicle by November 16, 2019 would result in it being sold at the Gary Police Department Auto Auction.  A true and correct copy of this letter is attached as Exhibit 2.

69.     After being apprised of the possibility of litigation regarding the towing of Mr. Freeman's vehicle, on November 15, 2019 the City of Gary removed Mr. Freeman's vehicle from the Police Department's auction listing for November 16, 2019.

70.     Mr. Freeman has suffered emotional distress and harm as a result of defendants' actions.

71.     Mr. Freeman has suffered physical pain and distress as a result of defendants' actions.

72.     At all times the defendants have acted under color of state law.

73.     State law does not afford Mr. Freeman an adequate remedy for the deprivation of his vehicle, and the deprivation of property without process is the policy or practice of the Gary Police Department.

74.     As a result of the actions or inactions of the defendant, Mr. Freeman is suffering irreparable harm for which there is no adequate remedy at law.

**Jury Trial Requested**

75.     Plaintiff requests a jury trial on all claims so triable.

**Legal Claim**

76.     The actions of the individual defendants constitute unlawful search and seizure in violation of the Fourth Amendment to the United States Constitution.

77.    The actions of the defendants constitute a deprivation of procedural due process in violation of the Fourteenth Amendment to the United States Constitution.

**Request for Relief**

WHEREFORE, the plaintiff requests that this Court:

1.    Accept jurisdiction of this cause and set it for hearing.

2.    Declare that the defendants have violated the rights of the plaintiff for the reasons described above.

3.    Enter a permanent injunction requiring the City of Gary to afford plaintiff the post-deprivation process required by due process.

4.    Award plaintiff his damages following a jury trial in this case.

5.    Award the plaintiff his costs and attorneys' fees pursuant to 42 U.S.C. § 1988.

6.    Award all other proper relief.

Stevie J. Pactor
Gavin M. Rose
ACLU of Indiana
1031 E. Washington St.
Indianapolis, IN 46202
317/635-4059
fax: 317/635-4105
spactor@aclu-in.org
grose@aclu-in.org

Attorneys for Plaintiff